May it please the court, Katie Shepherd for Mr. Chavez. There are two issues in this case. The first is whether the district court erred under the sentencing guidelines by denying a role reduction based on unrelated conduct. The second issue is whether the district court plainly erred by relying on arrest records and speculation in sentencing Mr. Chavez. In this case, Mr. Chavez pleaded guilty to importing 42 kilograms of methamphetamine from Mexico to Texas in 2016. He has two prior arrests in California. One was in May 2000 and that was an arrest for driving a vehicle across the port of entry with 13 kilograms of marijuana in it. And this is what the district court calls the bridge case with the 13 keys of marijuana. And in November 2015, he was pulled over for speeding and the car he was driving had $215,000 in it in a hidden compartment. The district court relied . . . I wanted to ask you, I cannot recall whether the marijuana bridge incident, as the district court called it, was there a hidden compartment in that as well? I imagine there was. Yes, Your Honor. The PSR says that the vehicle was laden with 13 kilograms of marijuana and that's the only detail that the PSR provides. The district court erred in relying on these arrests to deny a rule reduction because the guidelines require the district court to focus exclusively on the offense, which under the guidelines definitions means the offense of conviction and all relevant conduct. The arrests are clearly not the offense of conviction and they're also not relevant conduct. I would direct the court to paragraph 19 of the PSR, which does not include the arrests as relevant conduct. That's where the probation officer and the district court, by adopting the PSR, was calculating the drugs. So we have two issues before us. Just quickly on standard review for the two. Yes. When I read the sentencing hearing, the whole discussion of arrests, and arrests come up all the time in criminal history. There was no objection. Hey, we can't have this discussion. So I would think that we'd be reviewing the arrest portion of your argument for plain error, but the minor rule reduction denial for whether or not it was clearly erroneous to decide that your client hadn't shown by preponderance that he was lesser. Is that fair to say or you disagree? I agree that the second issue about relying on arrest records and speculation is subject to plain error review, and I would argue that the first error of relying on unrelated conduct to deny a mitigating role is reviewed under the clearly erroneous standard for a role reduction. The district court, as you said, discussed the arrests frequently. The court said that it wasn't his first time, he was driving drug proceeds, and he had the other bridge case where he's doing what he did in this case. And in response to that, defense counsel said, but as far as the situation right now and what's his involvement in this particular case, Your Honor, again, it's just it's driving a vehicle that had drugs in it. And because under the guidelines, the court should be focusing on the offense of conviction and any relevant conduct, that is my argument that the defense counsel did preserve that first error. But, okay. I would think the arrest discussion, especially when it wasn't just bare bones in the PSR, and the California one was pretty close in time, similar situation, and the defendant in the discussion, if I remember, didn't say, I didn't do that. He sort of said, hey, at least if it's going to be concurrent, run them together, right? He made some comment. So at that point, you've just got sort of a freewheeling discussion about recent similar activity. And my thinking would be, how would there be a miscarriage inherent in that discussion if we conclude that the facts show he wasn't minor for this offense just by his own car, right? Do you see where I'm going? Yes. I would ask this Court to follow its decision in Sanchez v. Arreal and find that the appropriate remedy would be to give the district court an opportunity to decide in the first instance whether the facts of this case merit a mitigating role. But Sanchez was, if I remember, I was on that panel, right? Correct. I thought that's one where everyone was talking about mules are vital. They're indispensable. Yes. And the probation officer did that here, but the government and the district court never said that's why he's losing it. So we don't have that issue in this case. Correct. But I think— That was the remand rule, which I think subsequent colleagues of mine even have limited further than what I wrote. Correct. But I think what Sanchez v. Arreal continues to stand for is the idea that if the district court makes a legal error in denying a mitigating role reduction and the mitigating role facts are debatable, it should be the job of the district court to first evaluate the facts to decide whether to give a mitigating role without the legal error. And although the legal error in this case is different because the court relied on unrelated conduct that wasn't the offensive conviction or didn't qualify as relevant conduct under the guidelines, the district court in Sanchez v. Arreal made a legal error by treating something as determinative when the guidelines instruct courts not to treat that factor as determinative. And in this case, I think the mitigating role facts are debatable, especially in light of the guidelines commentary example that says that someone who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for a role reduction. The burden was on the defendant to show that he was entitled to the mitigating role and he offered no evidence that he was anything other than operating on his own other than a conclusory statement of I was just working for others or something his counsel made. There is no evidence whatsoever. There is this statement of acceptance of responsibility that was signed by Mr. Chavez and explains that he was not the owner of the drugs, that he did not know the type and quantity of the drugs and that he was being paid to perform his task of driving the drugs across the bridge. I would also direct the court's attention to the 14th paragraph of the PSR, which says that Mr. Chavez was likely hired by unknown drug traffickers to smuggle the methamphetamine. So that's another indication of the record that there were other participants involved and as I was explaining with the guidelines commentary, with someone who doesn't have a proprietary interest and is simply being paid to perform a certain task, that person should be considered for a role reduction. The acceptance of responsibility letter said what you just told us, that he said he was paid to transport it or did it just say others, you know, he was doing it for others? He said he was not the owner of the drugs, he didn't know the type and quantity of the drugs and he was being paid to transport the drugs. For them. I didn't remember that. I don't know if he identifies specifically, he definitely doesn't identify by name other participants. He pleads guilty to a straight smuggling offense, his own, and then he's alone in the car and there isn't the usual stuff, he's got a phone that shows he's going to do a rendezvous point and for me, importantly, it's his car and he knew the pure amount was in there. That's not looking like lesser to others, that's looking like this is a confident solo smuggler. Well, I would, as I said with the PSR, it does say that he was likely hired by unknown drug traffickers, so that is some evidence of other participants and again, with the guidelines commentary saying that if you are not, don't have a proprietary interest in the drugs and are being paid to perform a certain task, that is, you should be considered for it and I would ask the court to let the district court decide that. I don't remember the acceptance of responsibility argument you're making now in your brief and of course, I don't remember everything in every brief in these cases, but I don't recall that. This sounds new to me. Excuse me. Sorry, Your Honor. I believe I made that argument most clearly in my reply brief in response to the government's argument that there was not any evidence in the record and I did rely on the statement of acceptance of responsibility at ROA 205 and I believe I did that in my reply brief, if I recall correctly. A lot of the mule cases where it's others, there's a conspiracy charged. I admit, the government didn't object to the paragraph that describes other people involved, so presumably that's a fact in the record. Correct. On the other hand, he still has the burden to show lesser compared to them and what makes me think he's not just a mule is that it's his own car and he got the drugs two weeks before he crosses. Is that right? Two weeks before? He got the car two weeks before. I don't think it's clear when exactly he got the drugs. I just think those facts aren't developed in the record, but he did get the car two weeks before. I mean, a lot of the pure mule cases, they don't even know the drugs are in there. It's not their car. They sort of say, someone gave me a car and I was foolish enough to accept it. Oh, my gosh. Here, the guy admits he knows it. It's a lot. It's in his own car. There's no one that we know he's going to. Right. I would agree with you, Your Honor, that the facts in this case are not as strong as they have been in other cases, but I would still say that it's- You've got to show clear error unless we think the arrest issue creates a legal problem. Right. And I do think the arrest issue does create a legal problem because under the guidelines, the denying mitigating role should be based on the defendant's participation in the offense, which includes the offense of conviction and relevant conduct. And as I was explaining earlier, the PSR doesn't include the arrest as relevant conduct in paragraph 19. So we're really, the district court should have relied only on the offense of conviction in denying the relevant conduct. So we'll have this to the record. In your reply brief at page 3, you state three times the government claims there was no evidence supporting Mr. Chavez's request for mitigating role reduction cited to their brief. This is not true. And you say Mr. Chavez submitted a statement regarding acceptance or responsibility that discusses his limited role in the offense, ROA 205, but you don't provide any details about that. I think that in my opening brief, I didn't discuss specifically that the arguments I was making and the facts I was presenting were from the statement of acceptance of responsibility. So in my reply brief, I was clarifying that there is evidence in the record and that was where it was coming from. It was more than just counsel's argument. It would help if we could have a little more clear statement rather than having to jump back and forth. I apologize for that, Your Honor. On that issue, a letter acceptance responsibility, was that signed? It's a little bit unusual for me. It may not be. I've been away for a long time. Yes, it is signed by Mr. Chavez. It is signed by him? Yes. So it's a statement of the defendant? Correct. And it says that he's reviewed the statement and everything in it is true and correct. As far as the PSR's decision that the arrests are not relevant conduct, that does make sense under this court's case law. Prior arrests that are too remote or insufficiently similar to the offense of conviction should not count as relevant conduct. And since the May 2000 arrest was nearly 16 years old, that is clearly too remote to constitute relevant conduct. This court said in Miller and Wall that four years old would be too remote to count as relevant conduct. And although the November 2015 arrest was closer in time, there isn't anything in the record to establish sufficient similarities when they were 1,000 miles apart and involved different circumstances of a traffic stop for speeding versus crossing the bridge, one involving currency, the other involving meth, one involving a Mercedes-Benz, and the other involving a pickup truck. Both involving a hidden compartment. Yes, there is that one similarity, but considering the lack of any other evidence about the common source or supplier or destination, I don't think that's enough for the court to find it was relevant conduct. And it would say that from the record, it appears that the May 2000 arrest was even more important to the district court than the November 2015 arrest. So if the court, if this court were to find that only the May 2000 arrest was inappropriate to rely on, I still think that would be sufficient to find an error. The court mentioned the bridge case four times and the November 2015 arrest twice, and the court talked specifically about how the bridge case was like what he was doing in this case as far as. I thought most of our case law disfavoring discussion of arrests was when no one agrees to the facts at all. But here, once the defendant sort of says, yeah, I'm the one who was arrested, and yes, I just want to be sentenced equally, it sounds like that sort of validates those arrest facts. Mr. Chavez did admit that he had been arrested, he had been arrested, but he did deny knowledge of the marijuana and knowledge of the currency. And under this court's case law in Harris, and also particularly in Windlass, there are two requirements for an arrest record to not be bare. One is that there has to be a factual recitation of the defendant's conduct, and second, that factual recitation has to provide sufficiently reliable evidence of guilt. So as far as the May 2000 arrest, I think that's bare under both requirements. The November 2015 arrest is not bare in the first sense because there is factual recitation, but it is bare in the second sense because that factual recitation Is there no obligation on the defendant to object to the PSR? See what I mean? That law that you described that I don't remember that well, even if the PSR describes all the facts for the arrest and the defendant doesn't object and say that's not right, the district court still can't say, well, it looks like you've been in this business. Well, I think the problem with that is the facts in the PSR explain that Mr. Chavez denied knowledge, which is what would make the conduct criminal. And especially with the May 2000 arrest, the court, the further information the PSR actually tends to negate that it provides sufficiently reliable evidence of guilt because the PSR says that federal charges were not pursued because Mr. Chavez denied knowledge of the marijuana and state charges were also not pursued and now all records have been purged. So especially with respect to the May 2000 arrest, there isn't much more I don't think that Mr. Chavez could do when the records have been purged and charges were not pursued because he didn't know about the marijuana. And as far as the November 2015 arrest, it is not illegal in California to have $100,000 unless you know it's from drug proceeds. I have some time for rebuttal. Thank you. You have time for rebuttal. Thank you, Mr. Chavez. Mr. Berry? Thank you, Your Honor. May it please the court, counsel. If I could, I'd like to begin by addressing factual questions from Judge Barksdale and Judge Higginson as to what was in the, what information was provided at re-arraignment and what was in Chavez's acceptance letter. At re-arraignment, the prosecutor was asked what evidence we could prove if the case went to trial. He stated that Chavez knowingly imported 42.86 kilograms of meth. He knew he was transporting a controlled substance into the United States. He was driving the vehicle and he was the only person in the vehicle. In his acceptance letter, which to the best of my knowledge is a bit outside of the ordinary, he added that he knew that the vehicle contained drugs. He did not know the type or quantity of the drugs. He was going to be paid after the drugs were brought in. He was not the owner of the drugs and no one forced him to bring the drugs in. Against that backdrop, Judge Crane was faced with a young man who had a prior misdemeanor conviction for possession of drug paraphernalia, a criminal theft conviction, a disorderly person conviction, which had originally been pled as two felony possession of drug charges, as well as arrests for possession of a concealed weapon, conspiracy to commit robbery, assault with a deadly weapon, possession of drug paraphernalia, and theft of movable property. Precisely as Judge Barksdale and Judge Higginson both noted, the single most in that the closest offense was the November 2015 arrest in California driving a Mercedes-Benz with $215,000 in 12 separate bundles wrapped in cellophane in a hidden compartment in the right, in the rear quarter panel of the vehicle. Four months later, Chavez buys the Honda Ridgeline for cash, $8,895 in the PSR. Less than two weeks after that, he's arrested crossing the bridge with 42.86 gross kilograms and 40.71 net kilograms of 97.2% pure methamphetamine, D-methamphetamine, also known as ICE, which was nine times the amount necessary to get the maximum possible offense level under the drug guideline. In this case, the district court was eminently justified in concluding that Chavez was trafficking. At the sentencing hearing, his defense counsel began to say he had made a mistake, a fairly common argument in courier or mule cases. He made a terrible mistake and he regretted it. Judge Crane cut him off and said, basically, this is by far not his first mistake. He is well experienced. Sixteen years ago, he crossed the border in California with 13 kilograms of cocaine. Less than four months ago, he was arrested in California with $215,000 wrapped in a manner and concealed in a motor vehicle, highly consistent with transporting drug proceeds. Yes, sir. Well, good argument, but it seems to me to go to offense severity and criminal history, and the sort of maybe artificiality of the issue before us is we're being asked, is any of what you said relevant to denying a role, minor role reduction, if that role reduction, the guidelines clarify, has to relate to the offense of conviction? As to the ---- So I guess you say, Crane says, you're not, this is no mistake. You've been doing this. To me, that sounds fair. But if he then also says, and by the way, since you've had a history with drugs, you couldn't have been a minor participant in this offense. I think that the law wouldn't allow, right? Well, Your Honor, if I could put a slightly different analysis on that. In cases where the defendant contests guilty knowledge, there are at least a dozen published opinions that say the jury is entitled to infer guilty knowledge from the quantity and value of the drugs. In this case, 42 kilograms. I understand that. Okay. Unless I'm wrong, the only issue is, did the district court err in denying a minor role reduction? And as I understand it, unless you're saying it's relevant conduct and giving us law for that, way back to 20 years ago offenses, the fact that he's got a really bad history, you described, and the stuff was really pure, is irrelevant to that sentencing decision. I respectfully submit, Your Honor, that the purity and the quantity is not irrelevant. It shows that he clearly has prior knowledge in drug trafficking. In this particular case, he had the burden to show that he was substantially less culpable than the other participants. In this case? In this case. He is ---- So what's the government's position on that? Are you saying there is no proof anywhere there were other participants, or do you accept that the PSR and the letter of responsibility sufficiently say there were others, it's just there wasn't enough evidence shown by him to meet the preponderance that he was less involved? What's the government's argument here? The primary or the initial argument is that there is no showing that there was anyone else involved. The burden is not on us to prove the reduction. The burden is on Chavez to prove the reduction. The only ---- the only ---- as paraphrased Judge Barksdale, who was more articulate than I am, the only proof is the single statement in his acceptance letter, I was to be paid after the drugs were in. There's no indication anywhere ---- The courts adopted that in their narrative, and they said likely there were others, and the government didn't move to strike it. So ---- But they prefaced it with likely there were others. In reality, there probably were others. There are almost always others in a drug case, particularly a case involving this much pure crystal meth. Okay. So if there are others, then your argument here is no clear error because really it looks like he was a solo operator. Oh, absolutely no clear error under a host of cases. Chavez-Hernandez, six people backpacking across the border with five bundles of marijuana, roughly 95 kilos, two juveniles are released to Mexico. The remaining four all request minimal reduction, and they're all denied because they're all occupying the same role. That wasn't a plain error case, was it? That wasn't a plain error case. Bellow-Sanchez, a case that Judge Smith authored that was in Appellant's 28J letter. Essentially, those facts were on the ---- it was a straightforward courier case, if you will. Those facts were essentially balanced on each side, and Judge Smith said it was obviously not clear to deny the reduction. In this case, as you yourself pointed out, the facts are not essentially balanced. He purchased the motor vehicle two weeks before the crossing for $8,800, although the PSR shows that he's had essentially no gainful employment in the last several years. Either the compartment was in the car or he had the compartment added to the car, and then he's caught at the bridge with at least a million dollars' worth of crystal death, if not more. Based on my extrapolation from, I believe it's Rodriguez-Gonzalez, 142 kilos, 10 to 40 million, 42 kilos, and I think that's going to be 2.95 to 11.8 million. No one would trust that to someone who is not experienced. So even if you had — even if he had asked for an analysis of the factors in Melton, which he did not, and therefore Judge Crane was not obligated to provide, even if he had asked for an analysis of the Melton factors, he clearly had some knowledge of the scope of the operation, since that's not a use quantity and it's not something that a drug-trafficking organization would send a rookie courier across the border with. He could easily have been expected to participate in the profits because it is a huge volume of drugs. And quite frankly, his — both the statement at rearrangement and the acceptance letter border on the absolute minimum sufficient to find guilt. I drove drugs across the border. I knew they were there.  I was going to be paid. Precisely as you said, Judge Higginson, how many border-crossing cases have there been in the last 25 years? People always offer who hired me, where they hired me, where I'm going, how much I'm supposed to get paid. Nothing. Not a single detail. Nothing. I knew there were drugs in the car. Nobody made me drive across the bridge. Understandably so, because he started out at a base office level of 38. You wouldn't want to add to that with obstruction. I respectfully submit that the district court did not commit clear error in denying a reduction for role in the offense, even if one analyzes the non-exhaustive list of factors in the — in Amendment 794 to 3B1.2. As to the bear arrest, he admitted both arrests at the sentencing hearing pages — I believe it's 178 and 179 of the record. He admits — he admitted both arrests. He argues that he did not commit the underlying crime for the obvious reason that the money movement case in California, for lack of a better term, is still pending prosecution. Obviously, the 2000 case will not be prosecuted. I would respectfully submit that the probation officer's statement that it was declined because he did not admit culpability was perhaps hyperbole. I suspect it was probably — I would respectfully submit that it was probably declined because the U.S. Attorney's Office had a cutoff threshold for drug cases, and it was substantially higher than 13 kilos. They would invariably have let the state do that. He was sufficiently concerned about the $215,000 in the Mercedes-Benz that his attorney requested Judge Crane run the sentence in this case concurrent with whatever happened in California. The trial court prosecutor resisted that effort and said, we don't know what's going to happen in California. This case should stand on its own. And I submit that it did, both as to the sentencing and the denial of a mitigating role adjustment. I respectfully submit there is nothing here whatsoever to show that he is substantially less culpable than the average courier with $1 to $3 million worth of d-methamphetamine hidden in a car he purchased two weeks earlier. As to the bare arrest record, the arrests were admitted by the defendant at sentencing. They are not bare arrests. There was substantial detail as to both events. And the similarity between all three is literally overwhelming. Drugs in a compartment, cash in a compartment, drugs in a compartment. And both the cash and the methamphetamine were in a concealed compartment in the rear of the car. I would respectfully ask that the conviction and sentence be affirmed. If there are any questions. All right. Thank you, Mr. Berry. Thank you, Your Honor. I heard you saved time for a vote. Thank you, Your Honor. May it please the court, I'd like to begin by clarifying something with the standard of review. This court's case law establishes that it is clear error if a district court's factual findings rest on an error of law. And I would submit that the court in this case did make an error of law by relying on unrelated conduct. And also, the court's review of whether a district court denies a mitigating role for clear error supports remanding in this case. Since this court would be deferential to what the district court would do, I would urge court to let the district court decide in the first instance without its legal error whether a mitigating role is appropriate. As far as Mr. Chavez admitting to the fact of being arrested, this court has said in many cases that the reason that it violates due process to rely on arrest is because arrests are consistent with innocence. And as far as the government talking about what might have happened in the May 2000 case, that is actually just speculation. The PSR says and the government did not object in the district court that the federal charges were not pursued based on Mr. Chavez's denial of knowledge of the marijuana. And as far as the PSR saying that there are likely, that he was likely hired by drug traffickers to smuggle the methamphetamine, the standard is a preponderance of the evidence. So I think likely makes sense to use in this case and would be sufficient. And as far as the question about needing to offer rebuttal evidence, I would direct the court's attention to the Hearns decision. In that case, the court said that there is no need to offer rebuttal evidence if the factual recitation is insufficiently reliable evidence of guilt. And in that case, it was a mortgage fraud conspiracy case. And there were a number of details in the PSR about different properties and the value of those properties and the transactions that had taken place. And the court said that even though the defendant had not offered rebuttal evidence, it was still error for the court to rely on those facts in the PSR because there was not information in the PSR about whether those transactions were connected to criminal activity. What rebuttal evidence are you referring in this instance? In this case, I was arguing that we, the defendant, did not need to offer rebuttal evidence because the... What rebuttal? What are you rebutting? It's your burden to prove the mitigating role. Correct. So I'm confused by your calling this rebuttal evidence. Well, with the first argument about the error of relying on unrelated conduct, I wouldn't say that rebuttal evidence has anything to do with that. But as far as the second error of relying on bare arrest records and speculation, there was not yet an obligation to offer rebuttal evidence because the PSR did not contain sufficiently reliable evidence of guilt. But you're conceding plain error review for the bare arrest claim? Yes, I am. And I do think that error is plain... Well, it seems like a non sequitur. Correct. I understand what you're saying. I think the government had argued in its brief that we needed to provide rebuttal evidence, and there were some questions in my first go-around about rebuttal evidence. I wanted to clarify that standard from the Hearns case for the court. And as far as the... There are other cases by this court where the court has found that arrest records are sufficient. For example, in the Harris case, there the arrest report said that the officer had actually witnessed the assault and that the victims declined to prosecute. So that's a good example of when an arrest record has sufficiently reliable evidence of guilt. There are also other cases from the government's brief, including Fuentes and Lopez-Velasquez. And in Lopez-Velasquez, the defendant had been arrested 11 times by ICE agents, and that was corroborated by the fact that the defendant had then been deported seven times. So in some of those cases, we have good examples of when there's enough for there to be sufficiently reliable evidence of guilt that corroborates the conduct underlying the arrest. And that's what is missing from this case. And if there are no further questions... Thank you, Ms. Shepard. Your case is under submission. Thank you.